609 A.2d 347

Doris PARKER

v.

STATE of Maryland, et al.

No. 1743, Sept. Term, 1991.

Court of Special Appeals of Maryland.

July 13, 1992.

John P. Rufe (Roger N. Powell, on the brief), Baltimore, for appellant.

Julia M. Freit, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellees.

Argued before WILNER, C.J., and ROSALYN B. BELL and WENNER, JJ.

WILNER, Chief Judge.

The principal issue before us is one of judicial immunity. We shall hold that it applies in the circumstances of this case.

The relevant facts are undisputed. On April 14, 1988, appellant was convicted in the District Court of speeding, for which she was fined $150 and assessed $5 court costs. She appealed the judgment to the Circuit Court for Baltimore City, where a *de novo* trial was scheduled for July 26. Appellant failed to appear, however, and so the court, pursuant to Md.Rule 1314 c., determined that she had waived her right to a *de novo* trial, dismissed the appeal, and "reinstated" the judgment.[1] On August 5, 1988, appel-

---

1. Several docket entries were made by the clerk on July 26. The relevant ones were "0348003NT FAILED TO APPEAR APPEAL DISMISSED," "JUGMENT [sic] REINSTATED TRIAL DE NOVO WAIVED," and "PAY BY 07–26–88."

   Although the notation that the judgment was "reinstated" is somewhat ambiguous, we must assume that it follows the procedure set forth in Rule 1314, as construed by the Court of Appeals, namely, that, when an appeal is taken, the District Court judgment becomes a "nullity," and that, if the appeal is later withdrawn or the appellant fails to appear for the *de novo* trial, the Circuit Court enters as *its* judgment the judgment that had previously been entered by the District Court. *See Zitzer v. Jones,* 48 Md. 115 (1878); *Montgomery Ward and Company v. Herrmann,* 190 Md. 405, 58 A.2d 677 (1948); *Hardy v. State,* 279 Md. 489, 369 A.2d 1043 (1977); Md.Rule 1314 c.

   In its proposed revision of the rules governing appeals from the District Court, the Court of Appeals Standing Committee on Rules of

lant not having paid the fine or court costs, Judge Roger W. Brown, a judge of the Circuit Court, issued a warrant for appellant's arrest. The record reveals that, despite six trips to appellant's home at varying times between September 20 and October 22, 1988, the Baltimore County police department, to whom the warrant had been sent, was unable to serve it.

On May 31, 1989, claiming that she had no notice of the July 26 trial date, appellant filed a motion to reinstate the appeal. That motion was granted, and Judge Brown then quashed the August 5 warrant. A *de novo* trial was eventually held before Judge Ross on September 22, 1989, at which appellant was acquitted of the speeding charge. The result of that proceeding was apparently not communicated to the Sheriff, however, who, on December 7, 1989, requested another warrant for failure to pay the fine and costs. In response to that request, and without calling for or reviewing the court file, which resided in the clerk's office and would have revealed the acquittal, Judge Brown issued another warrant. Unlike the earlier warrant, this one, unfortunately, was served. On the morning of January 17, 1990, appellant was arrested at her home in Baltimore County, taken to the police station, and kept there until she paid the $155 fine and costs later that afternoon.

Outraged at what occurred, appellant sued the State, Judge Brown, and several court clerks in a 16–count complaint filed in the Circuit Court for Baltimore County. The defendants moved to dismiss on the grounds that (1) proper venue was in Baltimore City, (2) no cause of action was stated against the clerks, who had nothing to do with the

---

Practice and Procedure will be recommending a change in that procedure. The new proposed Rule would make clear that the District Court judgment does not become a "nullity" but remains in effect pending an appeal to the Circuit Court and that, where the appellant fails to appear for trial in the Circuit Court, that court would simply dismiss the appeal and not enter any superseding judgment of its own. The proposed revision has not yet been submitted to the Court of Appeals for consideration, however, and so the procedure dictated by Rule 1314 remains in effect.

issuance of the warrant, (3) Judge Brown was entitled to absolute judicial immunity, and (4) the State could not be liable because none of its agents or employees were liable. No request was made for a hearing on the motion. On April 17, 1991, appellant filed an amended complaint which added eight new counts and two new defendants (the sheriff and one of his deputies). That same day, and apparently without knowledge of the amended complaint, the court signed a brief order granting the motion to dismiss the original complaint. The order of dismissal, which assigned no reasons, was filed and docketed on April 18.

Appellant filed a timely motion to alter or amend the judgment, complaining that (1) the order did not account for or address the amended complaint, (2) venue was properly in Baltimore County, and (3) causes of action were stated against the defendants. After a hearing, the court, on August 27, 1991, entered an order denying the motion, and this appeal ensued.

Appellant does not complain in this appeal about the dismissal of the clerks, the sheriffs, or the State, but focuses entirely on whether the actions against Judge Brown under 42 U.S.C. § 1983 and the Maryland Tort Claims Act should have been dismissed because of judicial immunity. Though acknowledging that the issuance of the warrant was a judicial act, she contends that, to escape liability on the ground of judicial immunity, Judge Brown must have had *both* subject matter and personal jurisdiction when he issued the warrant and that, upon the averments pled, he had neither. The Attorney General, on behalf of Judge Brown, does not contest that the judge was without personal jurisdiction over appellant. Her acquittal prior to the issuance of the second warrant left the court (and the judge) without jurisdiction over her person. The defense on appeal is that Judge Brown, acting for the court, had subject matter jurisdiction and that, to enjoy absolute judicial immunity, that was all he needed. We agree with that position.

*Subject Matter Jurisdiction*

Appellant's argument with respect to the existence of subject matter jurisdiction is brief and narrow. She points out that, under Art. IV, § 20(a) of the State Constitution, the circuit courts have all of the power that they had prior to the adoption of that provision in 1867, "and the greater or lesser jurisdiction hereafter prescribed by law." She turns then to Md.Code Cts. & Jud.Proc. art., § 12–404, which provides that, "[i]f a judgment of the District Court imposing a fine or penalty for violation of a law or ordinance is affirmed on appeal, the appellate court may commit the defendant or appellant in case of nonpayment of the fine or penalty, in accordance with law." From this combination, she urges that the circuit court has subject matter jurisdiction to issue an arrest warrant *only* when the District Court judgment has been affirmed, that the statute has, in effect, abrogated jurisdiction in all other situations, and that, as the judgment in this case was not affirmed, the court had no jurisdiction to issue a warrant.

That argument not only misconstrues the statute but overlooks the critical distinction, clearly drawn by both the United States Supreme Court and the Maryland Court of Appeals, between the lack of jurisdiction and the improper exercise of jurisdiction.

The circuit courts of this State, said the Court in *First Federated Com. Tr. v. Comm'r*, 272 Md. 329, 335, 322 A.2d 539 (1974), "are courts of original general jurisdiction, Maryland Const., Art. IV, §§ 1, 19, 20 and, therefore, they may hear and decide all cases at law and in equity other than those which fall within the class of controversies reserved by a particular law for the exclusive jurisdiction of some other forum." This is not only implicit from the Constitutional provisions cited by the Court, particularly Art. IV, § 20, but is explicit in Md.Code Cts. & Jud.Proc. art., § 1–501. Under that statute, the circuit court has "full common-law and equity powers and jurisdiction in all civil and criminal cases within its county, and all the additional powers and jurisdiction conferred by the Constitution and

by law, except where by law jurisdiction has been limited or conferred exclusively upon another tribunal."

Long before the creation of the District Court in 1971, the circuit courts were vested with jurisdiction to try, *de novo*, cases appealed from the justices of the peace, magistrates, and such other inferior courts that had been established. *See* 1957 Md.Code, art. 5, §§ 30, 43. The very notion of a *"de novo* appeal" is somewhat of an anomaly, however. Subject to its consideration of presently tentative Rules Committee proposals (*see ante*, n. 1) the Court of Appeals has regarded these types of proceedings, even though denominated as appeals, "as wholly original proceedings, that is, as if no judgment had been entered in the lower court." *Hardy v. State*, 279 Md. 489, 493, 369 A.2d 1043 (1977). Still, the statutes, and to some extent the Rules, have tended to mix the terminology, using some language more appropriate to an appellate proceeding and some that is more consistent with the established notion of an original proceeding. *See, for example*, 1957 Md.Code, art. 5, § 30, calling the proceeding an "appeal," but referring to an "acquittal" in the circuit court; *compare* § 39, the precursor of Cts. & Jud.Proc. art., § 12–404, speaking of the judgment being "affirmed upon appeal."

The clear thrust of the law, both before and after the creation of the District Court, was and is consistent with the present view of the Court of Appeals that, unlike appeals on the record, these are original proceedings in the circuit court. The Rules and statutes governing "appeals" from the District Court make this particularly clear. Unlike appeals heard on the record made in the District Court, where the circuit court affirms, reverses, or modifies the District Court judgment, or remands the case to that court (Md.Rule 1370)—actions clearly indicative of an appellate proceeding—in *de novo* cases, the circuit court enters its own judgment in the matter. *See* G. Liebmann, *District Court Law and Practice*, 1 Md.Practice § 221. Had the circuit court believed beyond a reasonable doubt that appellant was speeding, it would have entered a new judgment

convicting her of the offense and imposing whatever sentence it thought appropriate; it would not simply have affirmed the District Court judgment. Conversely, as actually happened, it entered a judgment of acquittal rather than an order reversing the District Court judgment.

Section 12–404 of the Cts. & Jud.Proc. article must be read in this light. Notwithstanding its reference to the District Court judgment being "affirmed on appeal," its history and import make clear that it applies only in cases where the trial in circuit court is *de novo*, and thus assumes that the judgment entered in the "appellate" proceeding will be that of the circuit court. It simply confirms that, when the circuit court imposes the same fine or penalty that was imposed by the District Court, the circuit court may enforce that fine or penalty. That approach, initially adopted with respect to *de novo* "appeals" from justices of the peace (*see* 1870 Md.Laws, ch. 56), merely states, in a particular way, the more general rule that judgments entered by the circuit court, even in this kind of proceeding, are enforceable by the circuit court. It is in no sense, then, a withdrawal or limitation of jurisdiction, as appellant avers, but a confirmation of circuit court jurisdiction.

We then must consider, in light of this construction of § 12–404, whether the court—Judge Brown—had continuing subject matter jurisdiction to issue an arrest warrant.

In the seminal case of *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1872), the Court articulated the doctrine of judicial immunity in the following terms: "[J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." In that regard, the Court noted that a distinction had to be drawn between an "excess of jurisdiction and the clear absence of all jurisdiction over the subject matter," and held that liability could attach only in the latter circumstance. That remains the law in Supreme Court parlance. *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331

(1978); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Mireles v. Waco*, —— U.S. ——, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). The *Bradley* Court illustrated the distinction by observing that, if a judge of a probate court, with jurisdiction limited to wills and decedents' estates, purported to try a person for a criminal offense, he would not be immune because jurisdiction to so act is "entirely wanting in the court, and this being necessarily known to the judge...." 80 U.S. at 352. On the other hand, a judge with jurisdiction over criminal offenses *would* be immune even if he tried and convicted a person for conduct that was not, by law, a criminal offense, the wrongful conduct there being merely "in excess of his jurisdiction." *Id.*

The Court of Appeals has drawn this same kind of distinction. In a series of cases, beginning with *First Federated Com. Tr. v. Comm'r, supra,* 272 Md. 329, 322 A.2d 539, and continuing with *Pulley v. State,* 287 Md. 406, 412 A.2d 1244 (1980), *Stewart v. State,* 287 Md. 524, 413 A.2d 1337 (1980), *Cant v. Bartlett,* 292 Md. 611, 440 A.2d 388 (1982), *Brodak v. Brodak,* 294 Md. 10, 447 A.2d 847 (1982), *Dorsey v. State,* 295 Md. 217, 454 A.2d 353 (1983), and *Carroll County v. Edelmann,* 320 Md. 150, 577 A.2d 14 (1990), the Court has held that "jurisdiction" in this fundamental sense refers to "the *power* to render a judgment over that class of cases within which a particular one falls" and not to the propriety of granting the relief sought. *See, for example, Pulley, supra,* 287 Md. at 416, 412 A.2d 1244 (emphasis added).

There can be no doubt that, under these principles, Judge Brown, acting for the court, had subject matter jurisdiction. As we have seen, the circuit court has jurisdiction to try *de novo* cases "appealed" from the District Court and to conclude the proceeding by the entry of its own judgment, which it may enforce. Whether under § 12–404 or pursuant to its more general authority under Md.Code art. 38, §§ 1 and 4, the law has clearly empowered a judge of the circuit court to issue an arrest warrant for someone who

has not paid a fine that was imposed by that court. That is the essence of subject matter jurisdiction, and that is precisely the authority that Judge Brown exercised in this case. The problem is that he exercised it in a case that was no longer pending before the court, against someone who had in fact been convicted and fined but whose conviction and fine had later been extinguished. The deficiency was thus akin to the second example given in *Bradley,* of an excess or inappropriate exercise of jurisdiction, rather than a lack of it altogether.

### Lack of Personal Jurisdiction

In *Bradley v. Fisher, supra,* 80 U.S. (13 Wall.) at 351, the Court stated, or at least implied, that, when the offending conduct was judicial in nature, immunity would exist unless the judge acted in "the clear absence of all jurisdiction over the subject-matter." In subsequent cases, the Court has expressed the doctrine in terms of whether the judicial act was taken "in the complete absence of all jurisdiction," dropping the limiting phrase "over the subject-matter." *See, for example, Mireles v. Waco, supra,* 112 S.Ct. at 288. Appellant has somehow construed this as a requirement that, for immunity to apply, there must be both subject matter and personal jurisdiction, and that the absence of either is fatal.

It is true that language appears in a number of cases suggesting that, for there to be immunity in an action based on judicial conduct, the judge must have had both subject matter and personal jurisdiction when engaging in the offending conduct. In none of those cases, however, was immunity actually denied because of a lack of personal jurisdiction. In some of the cases, the action was not against a judge at all. *See, for example, Pomeranz v. Class,* 82 Colo. 173, 257 P. 1086, 1090 (1927), where the defendants were a receiver, his lawyer, and a sheriff; *O'Regan v. Schermerhorn,* 25 N.J.Misc. 1, 50 A.2d 10 (1946), an action against members of a grand jury. In most, the defendant judge in fact had both kinds of jurisdiction, and

so the lack of personal jurisdiction was not an issue in the case. *See Almon v. Battles,* 541 So.2d 519 (Ala.1989); *Cato v. Mayes,* 270 Ind. 653, 388 N.E.2d 530 (1979); *Wilson v. Neu,* 12 Ohio St.3d 102, 465 N.E.2d 854 (1984); *Berry v. Smith,* 148 Va. 424, 139 S.E. 252 (1927); *Burgess v. Towne,* 13 Wash.App. 954, 538 P.2d 559, 562 (1975). In either event, the language suggesting that both aspects of jurisdiction were, or might be, required was essentially *dicta.*

In *Rankin v. Howard,* 633 F.2d 844 (9th Cir.1980), *cert. denied,* 451 U.S. 939, 101 S.Ct. 2020, 68 L.Ed.2d 326 (1981), the Court actually declared that both subject matter and personal jurisdiction was required for immunity to apply, but, apart from the fact that the holding in that case denying immunity rested principally on another ground— that the act complained of was part of a conspiracy between the judge and others and was therefore not judicial in nature—the court's treatment of both grounds was roundly criticized by other Federal appellate courts and, in consequence, was reconsidered and abandoned by the Ninth Circuit Court in a later case. *See Ashelman v. Pope,* 793 F.2d 1072 (9th Cir.1986). The law currently espoused by the Ninth Circuit Court of Appeals on this point, as set forth in *Ashelman,* is that "[a]s long as the judge's ultimate acts are judicial actions taken within the court's subject matter jurisdiction, immunity applies." *Id.* at 1078. *See also Mullis v. U.S. Bankruptcy Court, Dist. of Nevada,* 828 F.2d 1385, 1389 (9th Cir.1987), *cert. denied,* 486 U.S. 1040, 108 S.Ct. 2031, 100 L.Ed.2d 616 (1988): "A clear absence of all jurisdiction means a clear lack of all subject matter jurisdiction."

Most courts speaking more recently are in conformance with the *Ashelman/Mullis* view that, so long as subject matter jurisdiction exists, the judge enjoys immunity with respect to judicial conduct; i.e. a judge who possesses subject matter jurisdiction does not lack "all jurisdiction." *See Decker v. Hillsborough County Attorney's Office,* 845 F.2d 17, 21 (1st Cir.1988); *Green v. Maraio,* 722 F.2d 1013, 1017 (2d Cir.1983); *Adams v. McIlhany,* 764 F.2d 294, 298

(5th Cir.1985), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986); *Holloway v. Walker,* 765 F.2d 517, 523 (5th Cir.), *cert. denied,* 474 U.S. 1037, 106 S.Ct. 605, 88 L.Ed.2d 583 (1985); *John v. Barron,* 897 F.2d 1387, 1392 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990); *Birch v. Mazander,* 678 F.2d 754, 755 (8th Cir.1982); *Dykes v. Hosemann,* 776 F.2d 942, 949 (11th Cir.1985) (en banc), *cert. denied,* 479 U.S. 983, 107 S.Ct. 569, 93 L.Ed.2d 574 (1986); *Denardo v. Michalski,* 811 P.2d 315, 316 (Alaska 1991); *Aetna Ins. Co. v. Blumenthal,* 129 Conn. 545, 29 A.2d 751, 753 (1943); *State ex rel. Raack v. Kohn,* 720 S.W.2d 941, 944 (Mo.banc. 1986); *Delbridge v. Schaeffer,* 238 N.J.Super. 323, 569 A.2d 872, 876 (1989); *Lombardoni v. Boccaccio,* 121 A.D.2d 828, 504 N.Y.S.2d 260, 262 (1986); *Pokrandt v. Shields,* 773 F.Supp. 758, 764 (E.D.Pa.1991); *Spencer v. City of Seagoville,* 700 S.W.2d 953, 958 (Tex.App.1985); and *cf. Chu by Chu v. Griffith,* 771 F.2d 79, 81 (4th Cir.1985); *King v. Love,* 766 F.2d 962, 965 (6th Cir.1985); *LaNave v. Minnesota Supreme Court,* 915 F.2d 386, 387 (8th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2028, 114 L.Ed.2d 113 (1991). In reaching this result, the *Dykes* Court explained, 776 F.2d at 949, that "[w]ithdrawing judicial immunity where a judge has subject matter but not personal jurisdiction over a party affected by his ruling conflicts with all of" the policies listed in *Bradley v. Fisher* as underpinning the doctrine of judicial immunity. It noted that "[u]nlike questions of subject matter jurisdiction, which generally require only statutory interpretation, personal jurisdiction depends upon facts that a judge is not likely to be able to verify first hand," giving as examples *ex parte* restraining orders, orders against non-residents, and orders entered in collateral proceedings.

There is much to be said for this view. Judges—particularly chambers judges—often need to act upon applications, motions, and petitions presented by officers of the court in whom they must, of necessity, repose some trust and confidence. To be sure, judges should not go about signing orders affecting people's liberty or property without some

reasonable assurance that there is a legitimate basis for their action, but the law cannot, consistent with *Bradley,* impose on them the obligation to search extensively through all available records, or beyond, to make certain that the averments as to personal jurisdiction contained in a facially reasonable application, petition, or motion are supported, or not contradicted.

Upon this authority, and for these reasons, we conclude that, where an action is founded upon judicial conduct, a judge will enjoy absolute immunity from liability for damages if, in performing that conduct, the judge had general subject matter jurisdiction, whether or not he or she also possessed personal jurisdiction over the plaintiff. We therefore affirm.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.