653 A.2d 436

**Doris PARKER**

v.

**STATE of Maryland.**

**No. 99, Sept. Term, 1992.**

Court of Appeals of Maryland.

Feb. 7, 1995.

272

Roger N. Powell and John Paul Rufe, Baltimore, (both on brief), for petitioner.

Julia M. Freit, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore) all on brief, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE *, CHASANOW, KARWACKI and BELL, JJ.

ELDRIDGE, Judge.

This case concerns the nature and scope of judicial immunity from tort actions, both under Maryland law and under 42 U.S.C. § 1983.

## I.

The facts are not in dispute. On April 14, 1988, Doris E. Parker was convicted in the District Court of Maryland of driving in excess of the speed limit, was fined $150, and was assessed $5 in court costs. Parker appealed her conviction to the Circuit Court for Baltimore City, and a *de novo* appeal in that court was scheduled for July 26, 1988. Upon Parker's failure to appear on that date, the circuit court determined that she had waived her right to a *de novo* appeal and entered as its judgment the judgment of the District Court.[1] By August 5, 1988, Parker had not paid the fine, and on that date,

---

* McAuliffe, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. The circuit court docket entries reflect that the judgment of the District Court was "reinstated." The term reinstated, however, does not accurately reflect the procedure in place at the time Parker failed to appear. Under former Maryland Rule 1314, if a party appealing *de*

Judge Roger W. Brown of the Circuit Court for Baltimore City issued a warrant for her arrest. The Baltimore County Police Department made various attempts to serve Parker with this warrant but was unable to do so.

On May 31, 1989, ten months after the date scheduled for the *de novo* appeal, Parker filed a motion in the circuit court to strike the dismissal and to reinstate proceedings. Judge Brown granted the motion and quashed the earlier warrant for Parker's arrest. An appeal *de novo* was held before another circuit court judge on September 22, 1989, at which Parker was acquitted of the speeding offense.

On December 7, 1989, however, the Sheriff of Baltimore City appeared before Judge Brown and requested a second arrest warrant on the basis of Parker's "continued" failure to pay the $150 fine levied on July 26, 1988. Judge Brown issued the warrant without calling for the case file from the clerk's office or reviewing the docket entries which reflected Parker's September 22, 1989, acquittal. At 9:30 in the morning on January 17, 1990, Parker was arrested at her home in Baltimore County, taken to the Woodlawn police precinct in Baltimore County and detained there throughout the day until she

---

*novo* the judgment of the District Court failed to appear for the *de novo* appeal in the circuit court, rather than reinstate the earlier judgment, the circuit court entered as its judgment the judgment previously entered by the District Court. The current version of the Maryland Rules, effective July 1, 1993, rescinded, *inter alia*, former Rule 1314, and substituted Rule 7-112, which now provides, in relevant part, as follows:

"**(b) District Court Judgment.**—The District Court Judgment shall remain in effect pending the appeal unless and until superseded by a judgment of the circuit court or, in a criminal action, a disposition by nolle prosequi or stet entered in the circuit court.

"**(d) Withdrawal of Appeal; Entry of Judgment.**—

(1) An appeal shall be considered withdrawn if the appellant ... fails to appear as required for trial or any other proceeding on the appeal.

(2) Upon a withdrawal of the appeal, the circuit court shall dismiss the appeal, and the clerk shall promptly return the file to the District Court. Any order of satisfaction shall be docketed in the District Court."

paid the $150 fine. Judge Brown ultimately quashed the arrest warrant on January 19, 1990.

Parker filed the present action for damages in the Circuit Court for Baltimore County against the State of Maryland under the Maryland Tort Claims Act, Code (1984, 1993 Repl. Vol., 1994 Cum.Supp.), §§ 12–101 through 12–110 of the State Government Article, alleging false imprisonment, false arrest and negligence on the part of Judge Brown and the Clerk, Deputy Clerk and Assistant Clerk of the Circuit Court for Baltimore City.[2] Parker also sued the individual defendants under 42 U.S.C. § 1983, for the erroneous issuance of the warrant.

The defendants moved to dismiss on the grounds, *inter alia,* 1) that the complaint failed to state a claim upon which relief could be granted against the clerks because the clerks played no part in the issuance of the warrant, 2) that Judge Brown was entitled to absolute immunity for his judicial acts, and 3) that, if Judge Brown was immune from suit, the State could not be held liable under the Maryland Tort Claims Act for his actions. Parker then filed an amended complaint, adding the sheriff and a deputy sheriff of Baltimore City as defendants based on information contained in an affidavit submitted by Judge Brown regarding the incident. On the same day that the amended complaint was filed, the circuit court signed an order granting the defendants' motion and dismissing the action with prejudice. Parker then filed a motion to alter the circuit court's decision pursuant to Maryland Rule 2–534, requesting that the court reconsider its dismissal in light of the allegations in the amended complaint. After a hearing, the circuit court issued a second order denying Parker's motion to alter the original order of dismissal, but stating that

---

2. Parker did not specifically assert violations of the Maryland Constitution. Instead, her state law causes of action were grounded on the nonconstitutional torts of false arrest, false imprisonment and negligence. Nevertheless, in light of the scope of judicial immunity under Maryland law, the result would be no different if we construed Parker's allegations as setting forth a cause of action for violation of Article 24 or Article 26 of the Maryland Declaration of Rights.

the dismissal was without prejudice to the plaintiff's bringing a new action against the sheriff and deputy sheriff.

Parker appealed to the Court of Special Appeals, complaining about the dismissal of her action against Judge Brown and the State of Maryland.[3] Parker argued that Judge Brown was not entitled to judicial immunity because he had lacked both subject matter jurisdiction over Parker's case and personal jurisdiction over Parker when he issued the arrest warrant. While the Court of Special Appeals rejected this argument and held Judge Brown absolutely immune from suit, it did so on the basis that, under the constitutional and statutory provisions granting jurisdiction to the circuit court, Judge Brown was authorized in the circumstances to issue the warrant. *Parker v. State,* 92 Md.App. 540, 547, 609 A.2d 347, 351 (1992). In addition, the Court of Special Appeals held that judicial immunity attached if "the judge had general subject matter jurisdiction, whether or not he or she also possessed personal jurisdiction over the plaintiff." 92 Md.App. at 551, 609 A.2d at 352.

Parker petitioned this Court for a writ of certiorari, arguing, as she had in the Court of Special Appeals, that Judge Brown could not be held judicially immune from suit because he had lacked jurisdiction to issue a warrant for Parker's arrest. Concerned by the approach of both the petitioner and the Court of Special Appeals to the issue of judicial immunity in this case, we granted Parker's petition for a writ of certiorari.

## II.

Parker sued the State of Maryland for damages, under the Maryland Tort Claims Act, Code (1984, 1993 Repl.Vol.,

---

**3.** Parker has not challenged on appeal the dismissal of the claims based on the alleged tortious acts of the clerks. She has also raised no issue on appeal involving the actions of the sheriff and a deputy sheriff or involving the allegations of the amended complaint. The appellate proceedings in the Court of Special Appeals and in this Court concern only the claim against Judge Brown and the claim against the State of Maryland based on the allegedly wrongful acts of Judge Brown.

1994 Cum.Supp.), §§ 12–101 through 12–110 of the State Government Article, based on Judge Brown's allegedly tortious conduct. The parties to the present case have agreed that if Judge Brown is immune from suit, then the State of Maryland will not be liable under the Tort Claims Act. Accordingly, Parker's state law claims were properly dismissed if Judge Brown is entitled to the common law defense of absolute judicial immunity.

The principle that judicial officers should be immune from all civil liability for their judicial acts has been part of the common law since very early days. In 1607, an English court refused to entertain a civil action for damages against a judge of the Assizes, Richard Barker, for his role as judge in the trial and conviction of a criminal defendant. *Floyd v. Barker*, 12 Coke 23, 77 E.R. 1305 (1607). The court concluded that "the Judge, be he Judge of Assise, or a justice of peace, or any other Judge, being Judge by commission and of record, and sworn to do justice, cannot be [sued] ... for that which he did openly in Court as Judge or justice of peace...." 12 Coke at 24, 77 E.R. at 1306. The court based its holding on the established principle of law that "one shall never assign for error, against that which the Court doth as Judges...." 12 Coke at 24, 77 E.R. at 1307. To the same effect, the court cited one of its own earlier cases, in which "it was resolved, that that thing, that a Judge doth as Judge of Record, ought not to be drawn in question in this Court." 12 Coke at 25, 77 E.R. at 1307. In light of the clear legal principles involved, "it was ordered and decreed by all the Court, that the ... bill [against the judge] ... shall be taken off the file and cancelled, and utterly defaced...." *Ibid.*

Later, in 1674, Chief Justice Hale held that a tort action for false imprisonment would not lie against a magistrate for a "matter ... done in a course of justice...." *Bushell's Case*, 1 Mod. 119, 86 E.R. 777, 778 (1674).

In *Hamond v. Howell*, 2 Mod. 218, 86 E.R. 1035 (1677), a jury had acquitted two Quaker preachers, Penn and Mead,

who had been indicted for attending a conventicle.[4] The acquittal went "against the direction of the Court in matter of law and against plain evidence...." 2 Mod. at 218, 86 E.R. at 1035. Outraged by the acquittal, the judges "fined the jury forty marks a-piece" and sent them to Newgate gaol for their failure to pay the fine. Later, a juror sued one of the judges, Judge Howell, for false imprisonment. The defendant's attorney conceded that he "would not offer to speak to that point, whether a Judge can fine a jury for giving a verdict contrary to evidence, since the case was so lately and solemnly resolved by all the Judges of England ... that he could not fine a jury for so doing." 2 Mod. at 218, 86 E.R. at 1036. Instead, the defendant argued that "no action will lie against him ... because it is done as a Judge." *Ibid.* In response, the plaintiff contended that the judge was not entitled to judicial immunity because he had no jurisdiction to perform the wrongful acts, stating (2 Mod. at 219, 86 E.R. at 1036):

"The trial of Penn and Mead, and all incidents thereunto, as swearing the jury, examining of the witnesses, taking of the verdict, and acquitting the prisoner, were all within the [judicial] commission; but the fining of the jury, and the imprisoning of them for non-payment thereof, was not justi-

---

4. A "conventicle" was a meeting for religious worship in some form other than that prescribed by the Church of England. The Conventicle Act of 1664 prohibited "[u]nlawful conventicles and meetings under pretence of exercise of religion...." Act 16, Chas. II, c. 4. The Conventicle Act re-enacted the Elizabethan statute that made it a crime to "obstinately refuse to repair to some Church ... to hear Divine Service" and to be present at any "Assemblies, Conventicles or Meetings, under Colour or Pretence of any such Exercise of Religion, contrary to the Laws and Statutes of this Realm...." 35 Eliz. c. 1 (1593). Persons convicted under the 1593 Act were to be "committed to Prison, there to remain without Bail ... until they shall conform and yield themselves to come to some Church" to attend Church of England services.

In Maryland, the General Assembly passed in 1649 an "Act Concerning Religion." While the Act made blasphemy a criminal offense, it also mandated an extraordinary degree of religious toleration by the standards of the time. Under the Act, no person "professing to believe in Jesus Christ, shall ... be any Ways troubled, molested, or discountenanced, for, or in respect of his or her Religion, nor in the free Exercise thereof...."

fiable by their commission; and therefore what was done therein was not as commissioners or Judges."

The court in *Hamond v. Howell* rejected the plaintiff's argument, relying on a broad concept of jurisdiction to support the availability of immunity (2 Mod. at 220, 86 E.R. at 1037):

"The [trial court] had jurisdiction of the cause, and might try it, and had power to punish a misdemeanor in the jury: they thought it to be a misdemeanor in the jury to acquit the prisoners, which in truth was not so, and therefore it was an error in their judgments, for which no action will lie: how often are judgments given in this Court reversed in the King's Bench!"

The court held the defendant judge immune from civil liability for the misuse of his general power to punish the jury: "though [the judges] were mistaken, yet they acted judicially, and for that reason no action will lie against the defendant." *Ibid.*

The plaintiff in *Hamond v. Howell* also contended that the judge was not protected by judicial immunity because he had violated the jurors' rights under the Magna Charta and the Petition of Right of 1629. The court refused to except constitutional claims from the doctrine of judicial immunity, reasoning that constitutional rights, like other rights, were protected by existing mechanisms for appellate review. *Hamond v. Howell, supra,* 2 Mod. at 220–221, 86 E.R. at 1037.

Thus, by the seventeenth and eighteenth centuries, a broad concept of absolute civil immunity for judicial acts had been firmly established at common law. *See, e.g., Mostyn v. Fabrigas,* 1 Cowp. 161, 172, 98 E.R. 1021, 1027 (1774) ("by the law of England, if an action be brought against a Judge of Record for an act done by him in his judicial capacity, he may plead that he did it as Judge of Record, and that will be a complete justification"); *Ashby v. White,* 2 Ld.Raym. 938, 941, 92 E.R. 126, 129 ("no action lies against a man for what he does as a judge"), *rev'd on other grounds,* 1 Brown 62, 1 E.R. 417 (H.L. 1703); *Groenvelt v. Burwell,* 1 Ld.Raym. 454, 468, 91 E.R.

1202, 1211 (1699) ("as a Judge shall not be questioned at the suit of the parties, no more shall he be questioned at the King's suit before another Judge"); *Raine's Case,* 1 Ld.Raym. 262, 263, 91 E.R. 1071 (1697) ("no action lies against a man for what he does judicially").

The American courts likewise recognized the same broad principle of absolute judicial immunity from civil suits. *See, e.g., Busteed v. Parsons,* 54 Ala. 393, 25 Am.Rep. 688 (1875); *Phelps v. Sill,* 1 Day 315 (Conn.1804); *Briggs v. Wardwell,* 10 Mass. 356 (1813); *Wall v. Trumbull,* 16 Mich. 228 (1867); *Yates v. Lansing,* 5 Johns. 282 (Ct. of Errors 1810), *aff'd* 9 Johns. 395 (N.Y.1811); *Hoggatt v. Bigley,* 25 Tenn. 236, 6 Hum. 236 (1845).

In 1872, in an opinion by Justice Field, the Supreme Court decided *Bradley v. Fisher,* 13 Wall. 335, 20 L.Ed. 646 (1872), which remains today the leading American case on judicial immunity.[5] The Court refused to allow a civil suit to proceed against a judge who had prohibited an attorney from appearing in the court for allegedly using offensive language and threatening the judge "with personal chastisement."[6] The Supreme Court recognized that "in all countries where there is any well-ordered system of jurisprudence" judges had been granted immunity from liability "for acts done by them in the exercise of their judicial functions...." 13 Wall. at 347, 20 L.Ed. at 649. The Court explained the reasons for the grant of judicial immunity as follows (*Ibid.*):

---

**5.** Recent Supreme Court decisions using *Bradley v. Fisher* as authoritative precedent on the scope of judicial immunity include *Antoine v. Byers & Anderson, Inc.,* —— U.S. ——, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993), *Mireles v. Waco,* 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam), *Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988), and *Supreme Court of Va. v. Consumers Union,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980).

**6.** The attorney was Joseph Bradley. Judge Fisher barred Bradley from the court after the trial of Bradley's client, John H. Suratt, for complicity in the murder of Abraham Lincoln. The trial had ended in a hung jury.

"[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequence to himself. Liability to answer to everyone who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful."

As the Court in *Bradley v. Fisher* indicated, individual citizens are more likely to feel aggrieved and injured by judges than by other public officials, because judges are ultimately responsible for decisions closely affecting individuals' lives. 13 Wall. at 348, 20 L.Ed. at 650. Under these circumstances, the Court held, citing *Floyd v. Barker, supra,* 12 Coke 25, 77 E.R. 1305, that it is not enough to limit civil actions against judges to those involving judicial corruption or malice (13 Wall. at 348, 20 L.Ed. at 650):

"Controversies involving not merely great pecuniary interests, but the liberty and character of the parties and, consequently, exciting the deepest feelings, are being constantly determined in [the] courts.... If civil actions could be maintained in such cases against the judge, because the losing party should see fit to allege in his complaint that the acts of the judge were done with partiality, or maliciously or corruptly, the protection essential to judicial independence would be entirely swept away. Few persons sufficiently irritated to institute an action against a judge for his judicial acts would hesitate to ascribe any character to the acts which would be essential to the maintenance of the action."

Furthermore, the Court pointed out that the judicial system provides other avenues of relief for disappointed litigants. While erroneous rulings may be corrected through the appellate process, judges who act "with partiality, or maliciously, or corruptly, or arbitrarily, or oppressively, ... may be called to an account by impeachment and suspended or removed from office." 13 Wall. at 350, 20 L.Ed. at 650. Accordingly, the Court concluded, no judge "can[ ] be subjected to responsibili-

ty for [a judicial act] in a civil action, however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." 13 Wall. at 347, 20 L.Ed. at 649.

Seeking to avoid the application of the principle of judicial immunity, the plaintiff in *Bradley v. Fisher* contended that the order prohibiting his appearance was not a judicial act, since "the judge attempted to create for himself a jurisdiction and discretion not given by law." 13 Wall. at 346, 20 L.Ed. at 648. The Supreme Court disagreed, holding that a judge who has a general judicial authority to perform the kinds of acts for which he is sued is absolutely immune from civil liability for those acts. The Court explicitly rejected any conception of judicial immunity that would make a judge's immunity depend on whether or not he had jurisdiction in a narrow, technical sense, over the matter complained of. As the Court explained, 13 Wall. at 352, 20 L.Ed. at 651,

"some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction, or that of the court held by him, or the manner in which the jurisdiction shall be exercised. And the same principle of exemption from liability which obtains for errors committed in the ordinary prosecution of a suit where there is jurisdiction of both subject and person, applies in cases of this kind, and for the same reasons."

Accordingly, since the criminal court, "as a court of general criminal jurisdiction, possessed the power to strike the name of the plaintiff from its rolls as a practising attorney," the judge was immune from suit for his wrongful exercise of that power. 13 Wall. at 354, 20 L.Ed. at 651.

The Supreme Court described as acts "in excess of jurisdiction" those judicial acts that might be wrongful, or outside the technical jurisdiction of the judge, but which lay within his general jurisdiction. *Bradley v. Fisher, supra,* 13 Wall. at 351, 20 L.Ed. at 651. The Court distinguished acts taken in excess of jurisdiction from acts taken in the "clear absence of

all jurisdiction," holding that only in the latter situation could judges be sued. *Ibid.* The Supreme Court explained that, "[w]here there is clearly no jurisdiction over the subject-matter, ... for the exercise of [judicial] authority, when the want of jurisdiction is known to the judge, no excuse is permissible." 13 Wall. at 351–352, 20 L.Ed. at 651. The Court gave the following example of such a case (13 Wall. at 352, 20 L.Ed. at 651):

> "[I]f a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offenses, jurisdiction over the subject of offenses being entirely wanting in this court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority."

The Court emphasized that only in such egregious circumstances, where a judge's lack of jurisdiction was both obvious and known to the judge, would judicial immunity be withdrawn. In the more typical case, the Supreme Court concluded, "judges ... are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." 13 Wall. at 351, 20 L.Ed. at 651.

The common law principle of absolute judicial immunity for judicial acts has neither been abrogated nor been modified in Maryland.[7] On the contrary, this Court's cases have recognized that judges are absolutely immune from civil

---

7. The Maryland Declaration of Rights, Art. 5, provides that "the Inhabitants of Maryland are entitled to the Common Law of England" except to the extent that the common law has been changed by the legislature or by this Court. *See generally State v. Hawkins,* 326 Md. 270, 291–295, 604 A.2d 489, 500–502 (1992), and cases there cited; *Ireland v. State,* 310 Md. 328, 330–334, 529 A.2d 365, 366–368 (1987); *Kelley v. R.G. Industries, Inc.,* 304 Md. 124, 140–141, 497 A.2d 1143, 1150 (1985); *Boblitz v. Boblitz,* 296 Md. 242, 274–275, 462 A.2d 506, 521–522 (1983); *Moxley v. Acker,* 294 Md. 47, 51–52, 447 A.2d 857, 859–860 (1982); *State v. Buchanan,* 5 H. & J. 317, 365–366 (1821).

liability for their judicial acts.[8]  In *Roth v. Shupp*, 94 Md. 55, 50 A. 430 (1901), an action for false imprisonment against a Justice of the Peace, this Court stated that "a Judge or judicial officer, acting within his jurisdiction is exempt from liability for false imprisonment, even though his judgment may be the result of mistake, error of judgment, or even of malice." 94 Md. at 59, 50 A. at 431.[9]

More recently, this Court has reaffirmed the principle of absolute judicial immunity for judicial acts. *See, e.g., Mandel v. O'Hara*, 320 Md. 103, 107, 576 A.2d 766, 768 (1990) ("Absolute 'immunity protects ... judges ... so long as their acts are "judicial" ... in nature and within the very general scope of their jurisdiction'").  In particular, the Court has distinguished between the qualified and narrower immunity for discretionary acts generally accorded to public officials, and absolute judicial immunity, which, unlike qualified immunity, applies regardless of the nature of the tort and even where the suit against the judge alleges that he acted in bad

---

8. There is language in two cases of this Court, *Hiss v. State*, 24 Md. 556 (1866), and *Bevard v. Hoffman*, 18 Md. 479 (1862), that might appear to reflect a narrower concept of judicial immunity than that set forth in *Bradley v. Fisher, supra*, 13 Wall. 335, 20 L.Ed. 646.  In both cases, such language is purely dicta, and neither case is pertinent to our decision in the present appeal.  *Hiss v. State, supra*, 24 Md. 556, involved the criminal prosecution of a judge, and not a civil action against a judge for damages.  *Bevard v. Hoffman, supra*, 18 Md. 479, did not involve a judicial officer at all.  The defendants in that case were "judges of election," whose duties were executive in nature.

9. While the Court in *Roth v. Shupp, supra*, 94 Md. at 58–59, 50 A. at 431, explained that the defendant Justice of Peace had technical jurisdiction over the matter in controversy, the explanation was unnecessary to the Court's decision with respect to judicial immunity.  As *Bradley v. Fisher*, 13 Wall. 335, 352, 20 L.Ed. 646, 651 (1872), makes amply clear, only when jurisdiction is "entirely wanting in the court, and this being necessarily known to its judge," does a judge forfeit immunity for his judicial acts for reasons of lack of jurisdiction.  Similarly, the discussion in the opinion of the Court of Special Appeals in the present case, concerning the technical difference between the jurisdiction of the District Court and the circuit courts, *Parker v. State*, 92 Md.App. 540, 544–548, 609 A.2d 347, 349–351 (1992), is not determinative of the question whether Judge Brown is entitled to judicial immunity from the civil suit.

faith, maliciously or corruptly. *See Brewer v. Mele,* 267 Md. 437, 444, 298 A.2d 156, 161 (1972) (contrasting the absolute immunity of judges with the qualified immunity of law enforcement officers); *Eliason v. Funk,* 233 Md. 351, 356, 196 A.2d 887, 889–890 (1964) (comparing the principle that "judges have an absolute privilege from suits arising out of their judicial acts" with the qualified privilege extended to "officers exercising discretionary or quasi-judicial functions").

Moreover, our cases indicate that qualified public official immunity under Maryland law may apply only to negligence actions. *See, e.g., Cox v. Prince George's County,* 296 Md. 162, 168–169, 460 A.2d 1038, 1041 (1983) (explaining that "a police officer would not be personally liable for negligent conduct committed within the scope of employment due to his public-official immunity" and adding that "a police officer does not enjoy this immunity if he commits an intentional tort"); *James v. Prince George's County,* 288 Md. 315, 323, 418 A.2d 1173, 1178 (1980) (describing public official immunity as freeing governmental representatives from liability "for [their] negligent acts"). Indeed, while this Court has never sustained the defense of public official immunity to an intentional tort action, it is clear that judicial immunity operates to bar civil suits regardless of the nature of the tort alleged to have been committed. *Compare Cox v. Prince George's County, supra,* 296 Md. 162, 460 A.2d 1038; *Brewer v. Mele, supra,* 267 Md. 437, 298 A.2d 156; *Robinson v. Bd. of County Comm'rs,* 262 Md. 342, 278 A.2d 71 (1971); *and Mason v. Wrightson,* 205 Md. 481, 109 A.2d 128 (1954) *with Roth v. Shupp, supra,* 94 Md. 55, 50 A. 430. Similarly, while "a public official who violates a plaintiff's rights under the Maryland Constitution is entitled to no immunity," *Clea v. City of Baltimore,* 312 Md. 662, 680, 541 A.2d 1303, 1312 (1988); *Weyler v. Gibson,* 110 Md. 636, 73 A. 261 (1909), judicial immunity at common law encompasses claims based upon the deprivation of constitutional rights. *See, e.g., Bradley v. Fisher, supra,* 13 Wall. at 356–357, 20 L.Ed. at 652; *Hamond v. Howell, supra,* 2 Mod. at 220–221, 86 E.R. at 1037.

■ Furthermore, the *respondeat superior* liability of the governmental employer under a waiver of governmental immunity like the Maryland Tort Claims Act, Code (1984, 1993 Repl.Vol., 1994 Cum.Supp.), §§ 12–101 *et seq.* of the State Government Article, differs according to the type of immunity available to the public servant whose action gave rise to the civil claim. The qualified immunity of a public official does not necessarily protect a government employer sued on a theory of *respondeat superior.* *See James v. Prince George's County, supra,* 288 Md. at 336, 418 A.2d at 1184 (county's waiver of immunity "makes the county liable for the negligent conduct of all of its employees occurring in the course of their employment, without regard to their status as public officials"). Nonetheless, we have noted in this context that "not all acts or omissions by government bodies or officials may form the basis for recovery against the authority involved," because "there are certain discretionary policy-making, planning or judgmental governmental functions which cannot be the subject of traditional tort liability and thus remain immune from scrutiny by judge or jury as to [their] wisdom." *James v. Prince George's County, supra,* 288 Md. at 336 n. 15, 418 A.2d at 1184 n. 15. Judicial acts performed by judges are among those governmental functions that cannot give rise to civil liability in tort. Accordingly, a suit that is barred by judicial immunity cannot form the basis of a recovery against the State under the Tort Claims Act.

■ The differences between absolute judicial immunity and the qualified immunity of most other public officials are justified by the same concerns that precipitated the development of judicial immunity. Like other public officials, judges might be deterred from conscientious decision making if they were susceptible to civil liability for their official actions. Unlike other public officials, judges are required, on a daily basis, to make numerous decisions in disputes between adverse parties. With respect to each judicial decision, there is a winner and a loser. Furthermore, what is won or lost often has great value to the litigants: the custody of children, compensation for serious injuries, freedom from physical re-

straint, or simply large sums of money. With such important issues at stake in an adversarial context, absolute immunity is needed to forestall endless collateral attacks on judgments through civil actions against the judges themselves. *See Bradley v. Fisher, supra,* 13 Wall. at 348, 20 L.Ed. at 650.

Moreover, well-developed, institutionalized mechanisms exist within the judicial system for correcting erroneous decisions made by judges. Most alleged errors can be challenged through the established appellate process. In addition, extraordinary writs may be available in unusual circumstances. Furthermore, the Maryland Constitution sets forth procedures for the removal of judges from office for various forms of official misconduct and incapacity.[10]

In the present case, Parker seeks to hold Judge Brown liable in damages for issuing a warrant for her arrest. The issuance of arrest warrants is the type of judicial activity performed by a circuit judge, and is therefore, in the most general sense, a matter within the jurisdiction of the circuit judge.[11] In issuing the warrant, Judge Brown was performing a judicial act. Accordingly, Judge Brown is entitled to absolute judicial immunity, and the counts of Parker's complaint based on Maryland law were properly dismissed.

---

**10.** Under Maryland Constitution, Art. IV, § 4, the Governor may remove judges from office on the basis of certain criminal convictions, or impeachment under Art. III, § 26, or "on the address of the General Assembly...." Section 4B of Article IV authorizes the Court of Appeals to remove a judge from office for official misconduct, for persistent failure to perform judicial duties, or for "conduct prejudicial to the proper administration of justice...."

**11.** The circuit court is a court of original general jurisdiction. Code (1973, 1989 Repl.Vol., 1994 Cum.Supp.), § 1–501 of the Courts and Judicial Proceedings Article. Accordingly, the circuit court may exercise all of the inherent powers of a common law superior court, except to the extent that its jurisdiction has been limited by law or transferred exclusively to another tribunal. *Ibid. See County Exec., Prince Geo's Co. v. Doe,* 300 Md. 445, 453–454, 479 A.2d 352, 356–357 (1984); *Dorsey v. State,* 295 Md. 217, 227, 454 A.2d 353, 358 (1983); *First Federated Com. Tr. v. Comm'r,* 272 Md. 329, 334–335, 322 A.2d 539, 543 (1974).

**288**

### III.

Parker also sued Judge Brown "individually" under the Civil Rights Act of 1871, 42 U.S.C. § 1983.[12] The parties and the Court of Special Appeals proceeded on the basis that the issue of judicial immunity would be resolved identically with respect to the state law and federal law claims.

The starting point for immunity analysis under § 1983 is indeed the common law. While the language of § 1983 itself does not expressly provide for immunities, the Supreme Court has held that "[c]ertain immunities were so well established in 1871, when § 1983 was enacted, that 'we presume that Congress would have specifically so provided had it wished to abolish' them." *Buckley v. Fitzsimmons,* 113 S.Ct. 2606, 2613, 125 L.Ed.2d 209, 222–223 (1993). Accordingly, immunities recognized under § 1983 are based on traditional immunities recognized at common law. *See, e.g., Antoine v. Byers & Anderson,* 113 S.Ct. 2167, 2170, 124 L.Ed.2d 391, 397 (1993); *Buckley v. Fitzsimmons, supra,* 113 S.Ct. at 2612–2613, 125 L.Ed.2d at 222–223; *Burns v. Reed,* 500 U.S. 478, 484–487, 111 S.Ct. 1934, 1938, 114 L.Ed.2d 547, 557 (1991); *Imbler v. Pachtman,* 424 U.S. 409, 418–419, 96 S.Ct. 984, 989–990, 47 L.Ed.2d 128, 136–137 (1976).

The Supreme Court has chosen to modify and redefine qualified public official immunity for the purposes of § 1983. *See Anderson v. Creighton,* 483 U.S. 635, 644–645, 107 S.Ct. 3034, 3041–3042, 97 L.Ed.2d 523, 534 (1987), where the Court explained:

"Although ... our determinations as to the scope of official immunity are made in light of the 'common law tradition,' ... we have never suggested that the precise contours of official immunity can and should be slavishly derived from

---

12. Section 1983 provides a cause of action for those who suffer injury when federally created rights are violated by state officials acting under color of state law. *See Howlett by and through Howlett v. Rose,* 496 U.S. 356, 358, 110 S.Ct. 2430, 2433, 110 L.Ed.2d 332, 342 (1990); *Ritchie v. Donnelly,* 324 Md. 344, 354, 597 A.2d 432, 436 (1991).

the often arcane rules of the common law. That notion is plainly contradicted by *Harlow* [*v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)], where the Court completely reformulated qualified immunity along principles not at all embodied in the common law, replacing the inquiry into subjective malice so frequently required at common law with an objective inquiry into the legal reasonableness of the official action."

By contrast, the Court has consistently applied the common law concept of absolute judicial immunity, in its traditional form, to cases arising under § 1983. *See Antoine v. Byers & Anderson, Inc., supra,* 113 S.Ct. 2167, 124 L.Ed.2d 391; *Mireles v. Waco,* 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988); *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

In *Pierson v. Ray, supra,* 386 U.S. at 553–554, 87 S.Ct. at 1217, 18 L.Ed.2d at 294, the Supreme Court recognized that "[f]ew doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction." Quoting from *Bradley v. Fisher, supra,* 13 Wall. 335, 20 L.Ed. 646, and an English case, *Scott v. Stansfield,* L.R. 3 Ex. 220, 223 (1868), the Court adopted the traditional view of the purposes of the doctrine (386 U.S. at 554, 87 S.Ct. at 1218, 18 L.Ed.2d at 294):

"This immunity . . . 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.' "

Since the same considerations applied in § 1983 cases, the Court held that judges were absolutely immune from suits brought under § 1983. The Court reaffirmed its commitment to absolute immunity for judges in *Forrester v. White, supra,* 484 U.S. at 226, 108 S.Ct. at 544, 98 L.Ed.2d at 565, when it stated that

"the nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have.... [T]his is the principal characteristic that adjudication has in common with legislation and with criminal prosecution, which are the two other areas in which absolute immunity has most generously been provided.... Nor are suits against judges the only available means through which litigants can protect themselves from the consequences of judicial error. Most judicial mistakes ... are open to correction through ordinary mechanisms of review...."

The Supreme Court has applied judicial immunity principles to § 1983 cases as those principles are applied at common law. In *Stump v. Sparkman, supra,* 435 U.S. at 356–364, 98 S.Ct. at 1104–1108, 55 L.Ed.2d at 339–344, citing *Bradley v. Fisher, supra,* 13 Wall. 335, 20 L.Ed. 646, the Court held that "the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge," so that neither grave procedural errors nor the absence of jurisdiction in a technical sense could deprive a judge of immunity from liability for his judicial acts. Furthermore, the Court observed "that the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity." 435 U.S. at 362, 98 S.Ct. at 1107, 55 L.Ed.2d at 342. *See also Antoine v. Byers & Anderson, Inc., supra,* 113 S.Ct. 2167, 124 L.Ed.2d 391; *Mireles v. Waco, supra,* 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9; *Forrester v. White, supra,* 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555; *Supreme Court of Va. v. Consumers Union,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980).

In light of the Supreme Court's adherence to the traditional form of absolute judicial immunity in § 1983 cases, our holding with respect to Judge Brown's immunity from suit under state law applies equally to the federal § 1983 claim against him. Accordingly, Judge Brown cannot be held civilly liable, under

either state or federal law, for issuing the warrant for Parker's arrest. The Circuit Court for Baltimore County properly dismissed Parker's complaint.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY COSTS.*