637 A.2d 482

Jesse **TUCKER**, et al.

v.

Benjamin J. **WOOLERY**, et al.

No. 582 Sept. Term, 1993.

Court of Special Appeals of Maryland.

Feb. 23, 1994.

Certiorari Granted June 9, 1994.

Charles J. Janus of Temple Hills, argued, for appellants.

Jayson L. Spiegel, argued (Nelson W. Rupp, Jr. and Jordan, Coyne, Savits & Lopata, on the brief), Rockville, for appellee, Rosenberg.

Benjamin J. Woolery, Upper Marlboro, argued for appellee, Woolery.

Argued before WILNER, C.J., and ALPERT, J., and JAMES S. GETTY, Judge (Retired, Specially Assigned).

JAMES S. GETTY, Judge, Retired, Specially Assigned.

At the root of this appeal is a divorce action between Welvin C. and Bonita D. Goodwin, filed in the Circuit Court for Prince George's County. The Goodwins were partners with Jesse Tucker and nine others in the ownership of twenty-three properties. All of the partners except Bonita Goodwin are the appellants (hereinafter the "partners") in this appeal. In February of 1989, the court in the divorce action issued an order appointing the appellees, Benjamin Woolery and Paul Rosenberg (hereinafter the "trustees"), "Special Masters and Trustees for the purpose of determining the identity of the parties['] mar[it]al property, the value of the marital property and marital debts and for the purpose of selling the parties['] marital property. . . ." Claiming an interest in the partnership properties that were erroneously deemed to be marital property (*see Wilen v. Wilen*, 61 Md.App. 337–351–53, 486 A.2d 775 (1985), the partners petitioned to intervene in the divorce action, and the court permitted them to do so.[1]

In November of 1990, while the Goodwin divorce was still underway, the partners filed their initial complaint against the trustees for "misfeasance, malfeasance, nonfeasance, breach of

---

1. Apparently no one objected to the intervention in the divorce case by the nine individuals who asserted an interest in the twenty-three properties as partners with the appellant and the appellee. Under the Maryland Uniform Partnership Act, Md. Corps. & Ass'ns Code Ann., §§ 9–101 through 9–703, however, none of the properties owned by the partnership, or any undistributed proceeds from the sale of properties owned by the partnership, could possibly be marital property. *See Wilen v. Wilen*, 61 Md.App. 337, 486 A.2d 775 (1985).

fiduciary duty, and request for an accounting." The partners complained that the trustees had "done nothing in accordance with their appointment as trustees except to injure the Plaintiffs. . . . " The partners alleged, in essence, that the trustees were negligent and had breached their fiduciary duties by failing to sell or pay debts on any of the properties. Two weeks after filing the complaint, the partners filed a motion in the divorce action to remove the trustees. The partners referred to their complaint against the trustees and argued that, because of the complaint, the trustees now had a conflict of interest and that the trustees were "attempting to continue their fraud" by requesting that monies held in escrow in the divorce case be used to pay counsel fees arising from the complaint.

At the conclusion of a three day hearing, the motion to remove the trustees from the divorce action was denied on January 16, 1991, and the divorce case was settled the following May. In August of 1992, the trustees moved for summary judgment in the instant case, arguing that they were judicially immune from suit and that, in any event, the partners were collaterally estopped from pursuing the action, because their motion to remove the trustees from the Goodwin divorce case was denied by the court on January 16, 1991. After a hearing, the court granted the motion for summary judgment without comment.

The appellants present two questions in this appeal. They ask:

I. Does the appointment of a party as a trustee and/or special master by the [circuit c]ourt create absolute judicial immunity from suit?

II. Does the doctrine of collateral estoppel apply (1) where the decision in the first suit was interlocutory, (2) where new events have transpired and new facts will be presented which could not have been litigated below, (3) where new issues are to be resolved by the [c]ourt, and (4) the parties entered an agreement stating that the resolution

of a prior case would be without prejudice to the subsequent case?

Because our answer to the first question resolves the matter, we shall not address the second question. We note, however, that when the divorce case was dismissed by mutual consent of the parties, on June 19, 1991, the interlocutory order denying the motion to remove the trustees was then reviewable on appeal from the final judgment dismissing the divorce action. Once the divorce case was dismissed, there was no basis for any action by the partners. We note, however, that the nine partners should never have been permitted to intervene in the first place.

 "[W]here an action is founded upon judicial conduct, a judge will enjoy absolute immunity from liability for damages if, in performing that conduct, the judge had general subject matter jurisdiction...." *Parker v. State*, 92 Md.App. 540, 551, 609 A.2d 347, *cert. granted*, 328 Md. 462, 615 A.2d 262 (1992). Thus, judges acting with subject matter jurisdiction " 'are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction and are alleged to have been done maliciously and corruptly.' " *Id.* at 546, 609 A.2d 347 (citation omitted). *See generally Stump v. Sparkman*, 435 U.S. 349, 355–56, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978); *Pierson v. Ray*, 386 U.S. 547, 553–54, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967); *Mireles v. Waco*, —— U.S. ——, 112 S.Ct. 286, 288, 116 L.Ed.2d 9 (1991) (*per curiam*). "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362, 98 S.Ct. at 1107.

The trustees, of course, are not judges. We are nevertheless convinced that they are entitled to some degree of immunity. As the Supreme Court explained in *Briscoe v. LaHue*, 460 U.S. 325, 335, 103 S.Ct. 1108, 1115, 75 L.Ed.2d 96 (1983), "the common law provided absolute immunity from subsequent damages liability for all persons—governmental or oth-

erwise—who were integral parts of the judicial process." The State of Maryland adopted the common law of England with the enactment of Article 5 of the Declaration of Rights. "When judicial immunity is extended to officials other than judges, it is because their judgments are 'functional[ly] comparab[le]' to those of judges—that is, because they, too, 'exercise a discretionary judgment' as part of their function." *Antoine v. Byers & Anderson, Inc.,* —— U.S. ——, 113 S.Ct. 2167, 2171, 124 L.Ed.2d 391 (1993) (holding that court reporters are afforded no discretion in transcribing court proceedings and therefore are not entitled to judicial immunity for failing to produce transcripts in timely fashion).

> [I]n determining whether the protection afforded by the doctrine of absolute immunity is to be expanded to lesser judicial personnel, it is imperative always to bear in mind the reasons underlying the creation of the immunity shield. "The proper approach is to consider the precise function at issue, and to determine whether the officer is likely to be unduly inhibited in the performance of the function by the threat of liability for tortious conduct."

*McCray v. State of Maryland,* 456 F.2d 1, 3 (4th Cir.1972) (citation omitted). The immunity of officers of the court "derives, not from [the officers'] formal association with the judicial process, but from the fact that they exercise a discretion similar to that exercised by judges. Like judges, they require the insulation of absolute immunity to assure the courageous exercise of their discretionary duties." *Id.* (holding that the Clerk of the Baltimore City Court was not entitled to judicial immunity for failing to file court documents since the filing of documents is a mandatory, rather than a discretionary, function).

We addressed the issue of immunity from civil tort action involving judicial officers in *Rice v. Dunn,* 81 Md.App. 510, 568 A.2d 1125 (1990). In holding that District Court Commissioners were immune from civil liability, we focused on the following three-part test:

1. Whether the act was performed by a judicial officer.

2. Whether the act was discretionary rather than ministerial.

3. Whether the act was within the jurisdiction of the officer.

Applying the test to the present case, the appellees were unquestionably judicial officers when the court appointed them "Special Masters and Trustees." Md.Rule 2–541(a)(3) provides that a master, including a "special" master "serves at the pleasure of the appointing court and is an officer of the court in which the referred matter is pending."

There can be no question that the trustees in the present case performed discretionary functions. The court in the divorce action assigned them tasks that were essential to the resolution of the case and were judicial in nature. The court directed the trustees to identify marital property and debts, determine the value of the property and debts, and sell the property "at private or public sale and report the proceed[s] of the sale to the [c]ourt pursuant to Special Rule BR of the Maryland Rules of Procedure." Under Rule BR1, any sales by the trustees were "subject to ratification by [the] court. . . ."

It is equally clear that the trustees were acting within their jurisdiction. In fact, the appellees' principal complaint is that they did not act with due diligence in completing sales of the property, thereby causing the appellees significant financial losses. Exceeding their jurisdiction, therefore, is not an issue.

When faced with nearly identical situations, courts in other jurisdictions have held that court appointees enjoyed judicial immunity. In *New Alaska Development Corp. v. Guetschow,* 869 F.2d 1298 (9th Cir.1989), the United States Court of Appeals for the Ninth Circuit held that a receiver appointed by a state court to take over a husband's business affairs during the pendency of a divorce proceeding was entitled to absolute immunity from liability for judicial acts that he performed. According to the Court, "[a]bsent broad immunity, receivers would be 'a lightning rod for harassing litigation aimed at judicial orders.'" *Id.* at 1303 (citation omitted). The

Court explained that the receiver was not, however, immune from allegations of theft and slander, since such acts could not be considered judicial acts. *Id.* at 1304.

*Ashbrook v. Hoffman,* 617 F.2d 474 (7th Cir.1980), involved an Indiana divorce case. As part of the divorce decree, a state court awarded each party an undivided one-half interest in a restaurant. Thereafter, the former wife brought an action for partition and the court appointed two attorneys "partition commissioners." After the sale, the husband filed suit against the commissioners in federal district court. The United States Court of Appeals for the Seventh Circuit held that the district court properly dismissed the action on the ground that the commissioners were immune from suit. The Court explained:

> An analysis of a partition commissioner's official duties leads us to the conclusion that they are sufficiently related to the judicial process to entitle them to quasi-judicial absolute immunity for their official acts. A partition proceeding is in the nature of a judicial proceeding; it begins with a complaint and results in a judicial decree of partition.... Commissioners are appointed by a court, their duties are defined by statute, and the court reviews their conduct.... The commissioners make a judgment whether the lands for which partition is sought may be divided without damage to the owners.... The commissioners prepare a report of partition which is read in open court, and if confirmed by the court is entered in the record book.... The partition commissioners, under the supervision of the court, exercise discretion in the conduct of quasi-judicial proceedings. The commissioners serve as instruments or arms of the court leading to the issuance of a judicial decree of partition.... In total these factors suggest an integral relationship with the judicial process entitling partition commissioners to absolute quasi-judicial immunity for acts in furtherance of their official duties.

*Id.* at 476–77 (citations omitted).

Similarly, in *Drexler v. Walter,* 290 F.Supp. 150 (D.Minn. 1968), a lawyer for a husband in a divorce action in state court

filed suit against the referee in that action, who was also the court-appointed receiver of the husband's personal estate. The suit related to the receiver's act of subpoenaing the contents of a post office box which was held in the attorney's name but was allegedly used by the husband. Using Minnesota law, the United States District Court for the District of Minnesota, Fourth Division, held that the receiver enjoyed absolute judicial immunity. The Court explained:

> It is the [common law] rule in Minnesota that a receiver is an officer or representative of the court which appointed him subject to the control of that court.... Likewise, a referee is a subordinate of the appointing court....
>
> Further, Minnesota courts have long recognized the rule that judges and those acting in a judicial or quasi-judicial capacity are immune from civil liability for damages. The policy behind the rule is to insure that such officers will act upon their convictions free from any apprehension of possible consequences.... The desirability of such freedom of judicial action applies equally to court-appointed referees and receivers, and brings them within the cloak of judicial immunity.

*Id.* at 154 (citations and footnote omitted). Analogously, courts have held that, when acting within their authority, court-appointed trustees in bankruptcies, as well as receivers of failing corporations, are entitled to judicial immunity. *See Gregory v. U.S./U.S. Bankruptcy Court,* 942 F.2d 1498 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2276, 119 L.Ed.2d 202 (1992); *Bennett v. Williams,* 892 F.2d 822 (9th Cir.1989); *Property Management & Investments, Inc. v. Lewis,* 752 F.2d 599 (11th Cir.1985); *Kermit Const. v. Banco Credito Y Ahorro Ponceno,* 547 F.2d 1 (1st Cir.1976); *Clements v. Barnes,* 834 S.W.2d 45 (Tex.1992) (*per curiam*); *Boullion v. McClanahan,* 639 F.2d 213 (5th Cir.1981) (*per curiam*). *Compare County Corporation v. Semmes,* 169 Md. 501, 517, 182 A. 273 (1936) (where the issue of judicial immunity was not raised or considered, court-appointed receivers in the liquidation of a corporation were liable for negligence in the administration of the receivership).

■ The Restatement (Second) of Torts, § 895D, cmt. c, at 413 (1979) suggests that absolute judicial immunity be reserved for judges, and that, when the circumstances so warrant, other officers of the court be given a qualified immunity depending upon whether they harbored an "improper motive." *See generally* 1 Harper, James and Gray, *The Law of Torts* § 3.21 at 395 n. 2 (1986) (explaining that a qualified immunity is "conditioned on the good faith of the actor and the purpose of the actor's conduct"). *Cf. Clea v. City of Baltimore*, 312 Md. 662, 672–73, 541 A.2d 1303 (1988) (explaining that public officials performing discretionary functions enjoy a qualified immunity for tortious acts, meaning they are liable only if the acts were committed with malice). As we have observed, the essence of the partners' complaint is that the trustees failed to act. The complaint does intimate that the trustees engaged in self-dealing and misrepresented certain matters.[2]

■ The allegations are far too nebulous, however, to state a cause of action. *See generally* Md.Rule 2–303. They hint of fraud, moreover, which must be pleaded with particularity. "General or conclusory allegations of fraud are insufficient. A plaintiff must allege facts which indicate fraud or from which fraud is necessarily implied." *Antigua Condominium v. Melba Investors*, 307 Md. 700, 735, 517 A.2d 75 (1986). We are thus left with a complaint that alleges only a failure to act—negligence—and that can therefore be overcome with a defense of qualified immunity.

Under the circumstances, we need not determine if the trustees in the instant case are entitled to absolute judicial immunity. We hold that, as officers of the court who were appointed to perform a discretionary function integral to the judicial process, the trustees are entitled, at least, to a quali-

---

2. The partners contend in their brief that, after their motion in the Goodwin divorce case to remove the trustees was denied, the trustees "billed for hours where no services were rendered" and "removed $75,000.00 from the escrow account without advising" them. These allegations were not made in the complaint, however, and therefore are not properly before this Court. *See generally* Md.Rules 2–303 and 8–131(a).

fied judicial immunity in the performance of judicial acts. The motion for summary judgment was properly granted.

JUDGMENTS AFFIRMED.

APPELLANTS TO PAY THE COSTS.