Dear Mr. Stansbury:
Last year, you requested our opinion whether an individual who holds the position of a standing domestic relations master for the Circuit Court for Baltimore City is eligible for employment by the Board of Liquor License Commissioners for Baltimore City (the "Board") as an appeals counsel. Under the relevant statute, an employee of the Board may hold no other "public office or employment."
We responded to your request with an opinion concluding that the position of standing domestic relations master is a "public employment." Thus, we concluded, a domestic relations master is not eligible for employment by the Board as appeals counsel. 80Opinions of the Attorney General___ (1995) [Opinion No. 95-043 (October 10, 1995)].
Earlier this year, we were asked to reconsider our conclusion by the domestic relations master who was interested in employment by the Board as an appeals counsel. The "examiner-master," as the position is known in the Circuit Court for Baltimore City, presented us with a substantial amount of additional information about the functioning of a part-time master who hears uncontested divorce cases. We have also conducted our own additional research into the operation of the Circuit Court for Baltimore City with respect to its full-time and part-time masters.
Based on this new information and additional research, we are of the view that the conclusion in our prior opinion was incorrect. We now withdraw Opinion No. 95-043 and conclude instead that part-time domestic relations masters who perform the duties of master in their private law offices are more correctly viewed as independent contractor-appointees of the court, rather than as employees of either the City or State government. Therefore, the position of part-time domestic relations master in Baltimore City does not constitute "public employment," and the holding of this position will not preclude an individual from serving as appeals counsel for the Board.
 I Dual Employment Prohibition
The Board is charged with carrying out, within Baltimore City, the State's fundamental policy about alcoholic beverages: that their sale and distribution must be regulated and controlled. Article 2B, § 1-101(a) of the Maryland Code. To carry out this policy, the Board may "employ a secretary and such inspectors, clerical and other assistants as may be necessary, and [may] fix the compensation of such employees, except as otherwise provided by this article." Article 2B, § 15-112(b).
The Board is seeking to fill the position of an appeals counsel. The Board is authorized to employ two appeals counsel. These individuals are salaried employees who receive biweekly compensation. Their function, as we understand it, is to represent the Board in the Circuit Court for Baltimore City on appeals taken from decisions of the Board.
Appeals counsel, like other Board employees, are subject to the dual employment prohibition in Article 2B, § 15-112(e)(1). This paragraph provides, in pertinent part, that employees of the Board are not to "hold any other public office or employment, federal, State or local."
 II Position of Domestic Relations Master
Under Article IV, § 9 of the Constitution, "[t]he Judge, or Judges of any court, may appoint such officers for their respective courts as may be found necessary." Reflecting this provision, § 2-501(a) of the Courts and Judicial Proceedings ("CJ") Article, Maryland Code provides that "the judges of the circuit court for a county may employ the court administrators, assignment commissioners, auditors, masters, . . . and other employees necessary to conduct the business of the court." (Emphasis added.)[1] Maryland Rule 2-541 provides further detail about the appointment and powers of masters.
Masters play an important role in the effective functioning of the court system:
 [M]asters are appointed by a majority of the judges of the circuit court to perform certain duties. For example, a master is assigned to hear specific types of cases, including alimony pendente lite; support, custody, or visitation of children pendente lite; possession or use of the family home; and support of dependents. Rule 2-541(b) and Rule S73A. In addition, the court may "refer to a master any other matter or issue not triable of right before a jury."
76 Opinions of the Attorney General ___ (1991) [Opinion No. 91-043, at 5 (September 27, 1991)]. Masters serve at the pleasure of the appointing court and are officers of the court in which a referred matter is pending. Rule 2-541(a)(3).
The position held by the applicant under consideration is referred to as an "examiner-master" by the Circuit Court for Baltimore City. "Examiner-masters" hear only uncontested divorce cases. The role appears to be a combination of the duties of master set forth in Rule 2-541 and the duties of examiner set forth in Rule 2-542. Only uncontested proceedings may be referred to an examiner. Rule 2-542(b).
Masters are considered judicial appointees and are subject to the Code of Conduct for Judicial Appointees. Rule 1232. Pursuant to Canon 4 of the Code of Conduct for Judicial Appointees, a part-time judicial appointee, such as the examiner-master in question, may practice law to the extent permitted by the appointing authority (in this instance, the Circuit Court for Baltimore City). Canon 4I(2).[2]
 III Examiner-Master Position As "Public Employment"
Article 2B, § 15-112(e) bars a Board employee from serving as a standing domestic relations examiner-master if that position is either a "public office" or "public employment." For the reasons set forth below, we conclude that the position is neither.
A. "Public Office"
A standing domestic relations master does not hold a "public office." The position undoubtedly is an important one, created by rule. See Rule 2-541. Moreover, a master is protected by judicial immunity. See Tucker v. Woolery, 99 Md. App. 295,637 A.2d 482, cert. granted, 335 Md. 225, cert. dismissed asimprovidently granted, 336 Md. 280 (1994). Nevertheless, a master is not entrusted with any part of the judicial power under the Maryland Constitution. See Matter of Anderson, 272 Md. 85, 106,321 A.2d 516 (1974). "The duties of the master are of an advisory character only." Nnoli v. Nnoli, 101 Md. App. 243, 261 n. 5,646 A.2d 1021 (1994) (internal quotation omitted). Indeed, a master's function has been termed "ministerial." Matter of Anderson,272 Md. at 106. Thus, the position of a master has not been held to be a public office. See Cohen v. Goldstein, 58 Md. App. 699,474 A.2d 229 (1984); 72 Opinions of the Attorney General 281, 284 (1987). Nor does an examiner hold public office. Id.
B. "Public Employment"
In Brady v. Ralph Parsons Co., 308 Md. 486, 520 A.2d 717
(1987), the Court of Appeals set forth the test for determining the existence of an employer-employee relationship. That test inquires whether the employer has the right to control and direct the employee in the performance of the work and the manner in which the work is to be done. 308 Md. at 499. The five criteria established for guidance in administering the test are as follows:
1. the power to select and hire the employee;
2. the payment of wages;
3. the power to discharge;
 4. the power to control the employee's conduct;
 5. whether the work is part of the regular business of the employer.
All of these criteria are relevant only to the extent that the right of overall control is implicit in each. LMT SteelProducts, Inc. v. Peirson, 47 Md. App. 633, 636, 425 A.2d 242
(1981). The only test with "any special conclusive significance" is the power or right of control and supervision.47 Md. App. at 635. The Court summarized the test as follows:
 To have an employment relationship, the "employer" must have some ability, should he care to exercise it, to tell the "employee" what to do and how and when to do it. If there is not this minimal power of control — if the worker's agreement is to perform the work "according to his own means and methods free from control of his employer in all details connected with the performance of the work except as to its product or result" — the worker is deemed to be an independent contractor and not an employee/servant.
L.M.T. Steel Products, 47 Md. App. at 636.
In Brady v. Ralph Parsons Co., the Court of Appeals observed that, "Another way to distinguish servants from independent contractors is to say that the servant `is one within the personal or business household of the principal, whereas the non-servant is on the outside.'" Brady v. Ralph Parsons, 308 Md. at 511, (quotingRestatement (Second) of Agency 479 (1958)). The Court continued its quotation from the Restatement:
 "The servant is, thus an integral part of the master's establishment; the non-servant aids in the business enterprise but is not a part of it. Because the servant is an internal element of the establishment, it is normal for the head of the enterprise to control his physical acts and also the time when he is to act for the enterprise. Primarily, the servant sells his personal services, submitting to control as to his physical activities and the use of his time. The non-servant agent agrees sometimes to render services and sometimes to achieve results, but he does not surrender control over his physical actions."
Id.
With respect to the first and third criteria, the power to hire and discharge, the circuit court does have the authority to appoint a part-time domestic relations master, and the master serves at the pleasure of the court. Rule 2-541. However, the same power often can be exercised over independent contractors, as well as employees. These two criteria do not provide a strong basis for distinguishing between the two relationships. With respect to the fifth criterion, the work performed by the master is clearly part of the "regular business" of the "employer" — the court. Therefore this, criterion does support the position that the part-time masters are employees of the court. However, the facts regarding compensation, including benefits, and the "conclusive" factor — control — both support the conclusion that part-time domestic relations examiner-masters working in their private offices are appointees/independent contractors of the court.
Part-time domestic relations masters, unlike the full-time masters, work in their own private law offices and are compensated by fees paid by the litigants who appear before them, on a per-case basis. Rule 2-541.[3] While the court establishes the fees, the part-time masters are generally responsible for billing and collecting those fees. In contrast, full-time Circuit Court for Baltimore City masters work in the courthouse and are assigned a particular job classification; each classification is assigned an appropriate salary grade, as specified in the general salary schedule of the City of Baltimore, and full-time masters are paid a salary in accordance with that schedule. See Circuit Court for Baltimore City Personnel Policy. Payment on a per-job basis, rather than a time basis, is a factor indicative of an independent contractor status. Restatement (Second) of Agency
§ 220.
With respect to the critical criterion of control over the means and methods of performing the work, it is doubtful that the court ordinarily exercises a degree of control over part-time examiner-masters sufficient to establish an employer-employee relationship. According to Rule 2-541(c), the master has the power to regulate all proceedings in the cases referred by the court, including the powers to:
 1. Direct the issuance of a subpoena to compel the attendance of witnesses and the production of documents or other tangible things;
2. Administer oaths to witnesses;
3. Rule upon the admissibility of evidence;
4. Examine witnesses;
 5. Convene, continue, and adjourn the hearing, as required;
 6. Recommend contempt proceedings or other sanctions to the court; and
 7. Make findings of fact and conclusions of law.
Under this Rule, the court may provide certain instructions with respect to the handling of a particular case, in its order of reference. Masters are also subject to the supervisory powers of the Administrative Judge. Rule 1200 d 2. However, part-time examiner-masters in fact ordinarily exercise a great deal of freedom and independence from the court in carrying out their duties. The court's undoubted power to control is not exercised "with some immediacy and directness." L.M.T. Steel Products, Inc.v. Peirson, 47 Md. App. at 635. Indeed, were the court to do so, the benefits of judicial economy from the use of these part-time examiner-masters would largely evaporate.
The secretarial and administrative work for the examiner-masters is carried out by personnel that are privately employed by the master and compensated by the master. Hearings are held in the private law offices of the master, and the masters are responsible for providing and paying for that space and providing for insurance. The part-time master purchases and pays for all the supplies and equipment necessary to conduct hearings and to issue appropriate reports and recommendations. Part-time masters set their own schedules as to when and in what order cases will be heard, with no assistance or direction from the Circuit Court Clerk's Office. Part-time masters for the Circuit Court for Baltimore City are not required to work any particular hours or any particular days, and they are free to engage in the private practice of law.
In addition, the part-time domestic relations masters enjoy none of the benefits provided to individuals who occupy Circuit Court for Baltimore City budgeted position classes. See Personnel Policy. They are not entitled to participate in any Baltimore City or State of Maryland life or health insurance plans. Nor are they eligible to participate in any City- or State-sponsored pension plan. In fact, a review of the legislative history governing masters and their eligibility for participation in various State pension plans demonstrates that full-time and part-time masters have always been treated separately in this context. See Chapter 370, Laws of Maryland 1973. Moreover, unlike "employees" of the Circuit Court for Baltimore City, part-time domestic relations masters do not receive paid vacations, personal leave days, paid holidays, sick leave or any other paid leave time.
All of these working arrangements are in direct contrast to those of the full-time masters who work in the courthouse. The full-time masters have salaried, budgeted positions, and they are subject to the Circuit Court for Baltimore City Personnel Policy. They are expected to work daily, from 8:30 to 4:30. They must obtain approval for leave in advance, except in emergency situations. All of the supplies and equipment used in the performance of their work are provided by the court. The court provides the personnel to schedule hearings, notify witnesses, and issue reports and recommendations. Full-time masters are eligible for the full gamut of benefits provided to Baltimore City employees.
Although we find this to be a very close question, applying the law to the facts as we now understand them, we conclude that there is an insufficient showing of supervision and control over the operations of the part-time examiner-masters to warrant a finding of an employer-employee relationship.
 IV Conclusion
In summary, it is our opinion that a part-time domestic relations examiner-master for the Circuit Court for Baltimore City holds neither a "public office" nor "public employment" within the meaning of Article 2B, § 15-112(e) and therefore is eligible for employment by the Board. Opinion No. 95-043, which concluded otherwise, is withdrawn.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Deborah B. Bacharach Assistant Attorney General
_________________________ Jack Schwartz Chief Counsel Opinions Advice
[1] CJ § 2-501(a) begins with an exception, "as provided for the Circuit Court for Baltimore City in Title 2, Subtitle 5A of this article." This exception refers to a merit system for employees of the clerk's office.
[2] The Canons are set forth in Rule 1232. We are not aware of any guidelines issued by the Circuit Court for Baltimore City that reflect the extent to which part-time domestic relations masters are permitted to practice law. Nor are we aware of any opinions of the Committee on Judicial Ethics on point.
[3] The Circuit Court for Baltimore City not long ago authorized an increase in the examiners/masters' fees in uncontested divorce cases to $125, effective September 5, 1995.
 *Page 11