822 A.2d 1289

Katherine Rose FOX, a minor,

v.

Vincent WILLS.

No. 01075, Sept. Term, 2002.

Court of Special Appeals of Maryland.

May 6, 2003.

Elizabeth L. Ritter, Chevy Chase, for appellant.

Christopher Thomas Stidvent, Clarissa Hodges and Baker, Botts LLP, Washington, DC, for amicus curiae, Justice for Children.

William Brockman, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, and Julia M. Andrew, Assistant Attorney General on the brief), Baltimore, for appellee.

Argued before DEBORAH S. EYLER, GREENE and SHARER, JJ.

GREENE, Judge.

Katherine Rose Fox, appellant, seeks review of the July 17, 2002 Order of the Circuit Court for Montgomery County, dismissing her Complaint for malpractice against Vincent Wills, appellee.

Appellant raises one question for our review, which we have separated into two questions and rephrased:

I. Does a guardian *ad litem* owe a duty to his/her minor client, such that he/she could be subject to malpractice liability?

II. Is a guardian *ad litem* entitled to some form of immunity from suit?

We hold that guardians *ad litem* enjoy immunity for the exercise of their "judicial functions," including testifying and making reports and recommendations to the court, and that the guardian *ad litem* in this case was performing judicial functions and is protected by immunity. In light of our

answer to the immunity question, we do not find it necessary to answer whether a guardian *ad litem* owes a legal duty to his or her child clients.

## FACTS

Appellant is a minor child [1] whose parents were engaged in divorce proceedings in the Circuit Court for Montgomery County, in the case of Fox v. Fox, No. 178504–V. Appellee is an attorney who was appointed by the court in that case to be the *Nagle v. Hooks*[2] attorney, and later, to be the guardian *ad litem* for appellant. The instant case arose when appellant's mother, Elizabeth Ritter (Ritter), filed a Complaint on February 22, 2002, on behalf of appellant against appellee for legal malpractice.

Ritter alleges, in pertinent part, that appellee:

[F]ailed to prevent (by ensuring that court-required visitation supervisors adequately perform their duties as required by the court) an incident of child sexual abuse, failed to investigate the allegations of abuse, failed to report such abuse to Child Protective Services, and tried to suppress investigation on the incident at trial in this matter.

\* \* \*

[Appellee], even though he was made aware repeatedly that visitation supervisors were not adequately performing their duties and were leaving [appellant] alone with her father, failed to take any appropriate measures to ensure [appellant's] safety during visitations. [Appellee] failed to investigate the additional instance of child sexual abuse. . . . By his actions, [appellee] successfully kept the court from full and [sic] adjudication of all allegations of child sexual abuse in this matter.

---

1. The record does not reveal the exact age of the child.

2. 296 Md. 123, 460 A.2d 49 (1983).

\* \* \*

Throughout the course of his appointment as guardian *ad litem*, [appellee] has shown continuing and unaccountable bias in favor of [appellant's] father in this matter, which has prevented [appellee] from adequately representing [appellant's] interests and assuring her safety during visitations.... [Appellee] vigorously objected to Dr. Rosenberg's expert opinion regarding supervision being considered by the court, and was successful in his efforts to keep the court from considering Dr. Rosenberg's recommendation regarding supervision, and was adamant in repressing circulation of this report.

[Appellee] was aware of the contents and recommendations of a lengthy report by another court appointed evaluator, Susan Ward, in which Ms. Ward voiced serious concerns about [appellant] being alone with her father, about [appellant's] father's serious psychological issues, including sexual and sadistic issues, her concerns for [appellant's] safety if left alone with her father, and her recommendation of extremely limited (two to four hours a week) of [sic] visitation with [appellant's] father. [Appellee] attempted to suppress this report from being provided to Dr. Rosenberg in a subsequent evaluation.

\* \* \*

[Appellee's] bias in favor of [appellant's] father has kept him from actively pursuing numerous breaches of duty by supervisors and conduct by [appellant's] father inimical to her emotional and physical welfare, including, but not limited to:

\* leaving [appellant] alone with her father, even after being adjured by a judge of this court that [appellant] was not to be left alone "even for a moment" with [appellant's] father;

\*failing to address the issue of [appellant's] father from [sic] showing [appellant] a book with "pictures of little

boys penises" and discussing circumcision with [appellant];

*failing to ensure that supervisors require that [appellant] be appropriately placed in a car seat when transported during visitations, even after an order form this court requiring the same;

*failing to address the issue of [appellant's] father engaging in inappropriate "touching" games with [appellant], for example, one supervisor reported that [appellant's] father put [appellant's] legs around his neck and pulling [sic] [appellant's] dress over her head;

*failing to address numerous reported incidents of [appellant's] exhibitions of anger toward [appellant's] family members in front of [appellant].

\* \* \*

In addition, [appellee] failed to talk with any members of [appellant's] mother or [appellant's] father's families about this case, despite numerous requests by members of both families that they be permitted to speak with him and express concerns about [appellant's] safety and about [appellee's] failure to protect [appellant's] best interests.

Appellee filed a Motion to Dismiss the complaint, and on June 24, 2002, the court heard argument on the motion. On July 17, 2002, the court granted appellee's motion and dismissed the complaint, with prejudice. Ritter timely noted this appeal.

## DISCUSSION

It is helpful to the resolution of the case at bar to mention the varying roles of attorneys appointed to represent children and the scope of each of those roles. The Court in *Leary v. Leary*, 97 Md.App. 26, 40, 627 A.2d 30 (1993), citing a report by the Counsel for Kids Subcommittee of the Maryland State Bar Association Family Law Section, noted that there are different roles that counsel for a child can fulfill: (1) *Nagle v.*

*Hooks* attorney;[3] (2) Guardian *ad litem;* and (3) investigator.[4] In *Leary,* we also noted:

> Each one of the roles that an attorney for the children can assume may lead to an inherent tension between the attorney's role as advocate for the child and his or her duty to the court. In some cases, this may lead the attorney perilously close to violating the Model Code of Professional Responsibility.

*Leary,* 97 Md.App. at 40, 627 A.2d 30.

■ Later in the opinion, we noted that there are actually four different roles an attorney appointed to represent a child can fill: "waiver, pure representation, pure investigation, or a combination."[5] *Id.* at 45, 627 A.2d 30.

There is no dispute that appellee in the case at bar was appointed initially as a *Nagel v. Hooks* attorney and later as a guardian *ad litem*[6] for appellant in her parent's custody case,

---

3. In *Nagle v. Hooks,* 296 Md. 123, 460 A.2d 49 (1983), the Court of Appeals was asked to decide "whether a custodial parent may refuse to waive, on behalf of a minor child, in a custody action, the statutory psychiatrist-patient privilege regarding communications relating to diagnosis or treatment of a minor's mental or emotional disorder." *Id.* at 125, 460 A.2d 49. The Court concluded that Maryland law required the trial court to appoint an attorney to act as guardian of the child in the matter. *Id.* at 128, 460 A.2d 49. The Court held

 > that when a minor is too young to personally exercise the privilege of nondisclosure, the court must appoint a guardian to act, guided by what is in the best interests of the child.

 *Id.*

4. The Court in *Leary* commented that the investigative role includes giving "an investigative report to the court by counsel, social worker, psychiatrist, psychologist, or trained investigator with or without recommendations." *Leary,* 97 Md.App. at 40, 627 A.2d 30.

5. As a preliminary matter, it should be noted that the trial court should supply the attorney for the child with "precise, clear-cut orders" regarding the particular role the court intends for the attorney to fulfill. *Leary,* 97 Md.App. 26, 46, 627 A.2d 30. That way, it will be clear to the attorney where his or her duties lie.

6. The court has the statutory authority to appoint a guardian *ad litem* to represent a child pursuant to section 1 202 of the Family Law Article, which states:

*Fox v. Fox,* No. 178504–V. Therefore, a more detailed description of the role of a guardian *ad litem* follows.

*Role of Guardian Ad Litem*

In *Leary,* the father argued, among other things, that the court erred by failing to instruct the children's counsel as to her duties and that the court's error was "further magnified by counsel's failure to represent her clients adequately." *Id.* at 31, 627 A.2d 30. In answer to appellant's contention in *Leary,* we noted:

> Mr. Leary complains that "[d]ue process requires that the parties know precisely what the role of child counsel will be from the time of his or her appointment, in order to properly prepare for, and respond to, the evidence child counsel will present." The short answer is that Mr. Leary failed to ask for such instruction when the judge stated that he was going to appoint counsel, failed to object that no specific instruction was given after counsel was appointed, and failed to object to lack of instruction when counsel testified. The more relevant answer is that, regardless of whether appointed counsel was properly instructed, she did in fact provide the trial judge with what he needed.

*Id.* at 39, 627 A.2d 30.

We also noted that

> the trial judge did not enter an order stating the purpose for the appointment [of counsel for the children]. While it would have been preferable for him to have done so, we do not conclude that the omission in this case was fatal.

---

In an action in which custody, visitation rights, or the amount of support of a minor child is contested, the court may:

(1) appoint to represent the minor child counsel who may not represent any party to the action; and

(2) impose against either or both parents counsel fees.

Md.Code (1984, 1999 Repl.Vol.), § 1–202 of the Family Law Article; *see also Goldberg v. Miller,* 371 Md. 591, 608, 810 A.2d 947 (mentioning that section 1–202 provides for the appointment of the guardian *ad litem*).

■■■■■■■■

* * *

Ms. Coates's role as counsel to the children was clearly designed to assist the trial court in finding the children's preferences and to determine whether the expressed prefer-ences were properly motivated.

*Id.* at 46, 48, 627 A.2d 30.

The Court in *Leary* noted that there appear to be two schools of thought regarding the role of the guardian *ad litem:* "one school holds that the child's preference is but one fact to be found, while the other maintains that without full advocacy of the preference there would be little reason to have a child's representative at all." *Id.* at 42, 627 A.2d 30 (citing Note, *Lawyering For the Child; Principles of Representation in Custody and Visitation Disputes Arising form Divorce,* 87 Yale L.J. 1126, 1141 (1978)). The Court also noted that the attorney for the children in that case

was not acting strictly as an advocate of their position, but as a conveyer of their preferences, which she concluded were not improperly motivated. In other words, the cir-cumstances forced her to take the middle ground between advocacy and fact finding.

*Id.* at 50, 627 A.2d 30.

In short, the attorney's role was a combination of attorney as advocate and attorney as investigator—a fitting description of what the typical guardian *ad litem* is intended to do.

In *Auclair v. Auclair,* 127 Md.App. 1, 730 A.2d 1260 (1999), this Court was asked to decide whether children whose par-ents were involved in a custody dispute were entitled to intervene in their parents' lawsuit and whether the children were permitted to obtain their own attorney, in addition to the guardian *ad litem* that had been appointed to represent them. *Id.* at 7, 730 A.2d 1260.

In discussing whether the children were entitled to an advocate, we addressed the approaches of a number of other states. *Id.* at 24, 730 A.2d 1260.

While we recognized that some states permitted trial courts to appoint pure advocates for children, we also noted that the majority of states have adopted a "hybrid approach" for child representation. *Id.* at 25, 730 A.2d 1260.

Under this approach, the guardian must express to the court the child's preferences; however, when the guardian's best interest recommendation differs from the child's views, the guardian must advocate for the child's best interest. *Id.*[7]

In *Auclair*, we agreed with the majority view and held that "children are not entitled to an advocate for their preferences in their parents' custody dispute." *Id.* at 26, 730 A.2d 1260.

While it seems clear from *Leary and Auclair* that circuit courts in Maryland have the authority, in the appropriate case, to appoint an attorney to represent a child purely as an advocate, it is equally clear that nothing in Maryland law requires the courts to appoint an advocate. *Auclair*, 127 Md.App. at 24, 730 A.2d 1260; *Leary*, 97 Md.App. at 40, 627 A.2d 30. In any event, there is no dispute that appellee in the case at bar was appointed as a guardian *ad litem* and not as a pure advocate.[8]

---

7. By analogy, the Appendix to the 2003 Maryland Rules Of Professional Conduct sets forth Guidelines of Advocacy for Attorneys Representing Children in CINA and Related TPR and Adoption Proceedings. Guideline B1 provides that the "attorney should advocate the position of a child unless the attorney reasonably concludes that the child is unable to express a reasoned choice about issues that are relevant to the particular purpose for which the attorney is representing the child...." Guideline B2 provides, "when an attorney representing a child determines that the child does not have considered judgment, the attorney should advocate for services and safety measures that the attorney believes to be in the child's best interests...."

8. As a pure advocate, even if the attorney for the child believed that the outcome desired by the child was not in the child's best interest, the attorney would be bound by the Rules of Professional Conduct to advocate solely for the child's wishes.

Rule of Professional Conduct 1.2 states:
(a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c),(d), and (e), and, when appropriate, shall consult with the client as to the means by

In *Auclair*, while discussing the role of the guardian *ad litem*, we quoted, with approval, the Supreme Court of Wyoming:

> In custody matters, the guardian *ad litem* has traditionally been viewed as functioning as an agent or arm of the court, to which it owes its principal duty of allegiance, and not strictly as legal counsel to a child client. In essence, the guardian *ad litem* role fills a void inherent in the procedures required for the adjudication of custody disputes. Absent the assistance of a guardian *ad litem*, the trial court, charged with rendering a decision in the "best interests of the child," has no practical or effective means to assure itself that all of the requisite information bearing on the question will be brought before it untainted by the parochial interests of the parents. Unhampered by the *ex parte* and other restrictions that prevent the court from conducting its own investigation of the facts, the guardian *ad litem* essentially functions as the court's investigative agent, charged with the same ultimate standard that must ultimately govern the court's decision—i.e., the "best interests of the child." Although the child's preferences may, and often should, be considered by the guardian *ad litem* in performing this traditional role, such preferences are but one fact to be investigated and are not considered binding on the guardian. Thus, the obligations of a guardian *ad litem* necessarily impose a higher degree of objectivity on a guardian *ad litem* than is imposed on an attorney for an adult.

which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter ... Rule 1.14 states in pertinent part:

(a) When a client's ability to make adequately considered decisions in connection with the representation is impaired, whether because of minority, mental disability or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client.

It would seem, then, that a child's attorney whose only role is to advocate for his client, who commits malpractice while representing that client, could be sued, just as if he committed malpractice while representing a client who was an adult.

*Id.* at 17, 730 A.2d 1260 (quoting *Clark v. Alexander,* 953 P.2d 145, 152 (Wyo.1998)).

We also noted the following regarding the guardian *ad litem's* duties:

> In the case of a guardian *ad litem,* the overarching obligation of the guardian is to act as an investigative arm of the court and aid it in its determination of what is in the best interest of the child. In this role, the guardian is less concerned with providing counsel and advising the children and more concerned with reporting accurately the familial history and relationships of the parties to the dispute and the resulting impact on the current and projected future well being of the children.

*Auclair,* 127 Md.App. at 28–29, 730 A.2d 1260.

*Immunity*

 Negligently reporting to the court and making a recommendation that is not in the child's best interest, not speaking to the child's therapist when there are allegations of abuse, or choosing not to bring the therapist's concerns to the court, could be characterized as negligent and even reckless actions in some instances. The attorney, as guardian *ad litem,* acts mainly as an arm of the court and performs judicial functions in these situations, however, and enjoys immunity in the performance of those judicial functions, even if he acted negligently.[9] *Leary,* 97 Md.App. at 40–41, 627 A.2d 30; *see*

---

**9.** By contrast, if the guardian *ad litem* commits a tort against his or her minor client but that tort is unrelated to the legal representation of the child, the guardian enjoys no immunity from suit. For example, if the guardian physically assaults the child or drives the child somewhere and negligently causes injury to the child, the guardian lacks immunity. Also, if the attorney is appointed to act strictly as an advocate and negligently represents the child, there ·is no immunity because the attorney is not performing a judicial function. The attorney is merely representing the child and advocating for the child's wishes.

Finally, we note that nothing we say in this case has any bearing on people appointed as guardians of the person pursuant to Md. Rule 10–201 and section 13–705 of the Estates and Trusts Article of the Md. Code, or persons appointed as attorneys to represent the alleged disabled person under the statutory section and rule just mentioned. *See*

**42**

*also Tucker v. Woolery,* 99 Md.App. 295, 304, 637 A.2d 482 (1994)(noting that trustees appointed to sell property in a divorce case are entitled to qualified judicial immunity in the performance of judicial acts).

 In the case at bar, appellant concedes that she made no allegations of malice. Rather, her complaint alleges incidents of appellee's actions or inactions that she perceives to be negligent. Thus it is clear that the guardian *ad litem* in this case enjoys at least qualified immunity.[10] *See Tucker,* 99 Md.App. at 304, 637 A.2d 482 (noting, in a case against trustees appointed to sell property in a divorce action, that the complaint against them was for negligence, and therefore the court did not need to determine if they were entitled to absolute judicial immunity because qualified immunity was sufficient to protect them).

While the Court in *Leary* was not asked to decide whether guardians *ad litem* could be sued, the opinion provides some helpful dicta in answer to the question in the case at bar:

> When the court appoints an attorney to be a guardian *ad litem* for a child, the attorney's duty is to make a determination and recommendation after pinpointing what is in the best interests of the child. The attorney who assumes the traditional guardian *ad litem* role has a responsibility primarily to the court and therefore has absolute immunity for "judicial functions," which include testifying and making reports and recommendations. This more traditional role is

---

*In Re: Sonny E. Lee,* 132 Md.App. 696, 719–23, 754 A.2d 426 (2000) (noting that an alleged disabled person who is the subject of a guardianship proceeding is entitled to an advocate, as opposed to a guardian *ad litem,* during the proceeding).

10. We need not address whether the guardian *ad litem* in this case enjoys absolute judicial immunity because his qualified immunity is clear. The absolute immunity of judges, however, is so great that even where the suit against the judge alleges that he acted in bad faith, maliciously, or corruptly, in his judicial capacity, the judge is immune from suit. *Parker v.* State, 337 Md. 271, 281, 653 A.2d 436 (1995)(relying on *Bradley v. Fischer,* 13 Wall. 335, 80 U.S. 335, 347, 20 L.Ed. 646 (1872)); *Brewer v. Mele,* 267 Md. 437, 444, 298 A.2d 156 (1972); *Tucker v. Woolery,* 99 Md.App. 295, 299, 637 A.2d 482 (1994).

defined by the court and the attorney looks to the court for direction and remuneration. If, however, the attorney takes on a task that is outside of the clearly defined scope of the guardianship duties, judicial immunity may well not attach. *Leary,* 97 Md.App. at 40–41, 627 A.2d 30.

Appellant argues that appellee engaged in acts outside the scope of guardianship duties and that therefore, he is not immune. Appellant fails to allege any facts, however, that support that contention. All of the actions that appellant alleges appellee negligently did, or failed to do, fit within the rubric of investigating and reporting to the court, the fundamental judicial functions of a guardian *ad litem.*

In the case of *Short v. Short,* 730 F.Supp. 1037 (D.Colo. 1990), the United States District Court for the District of Colorado was asked to answer the very question presented by the case at bar. While clearly not binding on this Court, we find the reasoning in that opinion most helpful:

> [T]he need for an independent guardian *ad litem* is particularly compelling in custody disputes. Often, parents are pitted against one another in an intensely personal and militant clash.... To safeguard the best interests of the children, however, the guardian's judgment must remain impartial, unaltered by the intimidating wrath and litigious penchant of disgruntled parents. Fear of liability to one of the parents can warp judgment that is crucial to vigilant loyalty for what is best for the child; the guardian's focus must not be diverted to appeasement of antagonistic parents.

*Id.* at 1039 (internal citations omitted).

In answer to the countervailing concern of holding guardians *ad litem* accountable, the District Court added these remarks, with which we agree:

> [T]here are judicial mechanisms in place to prevent abuse, misconduct and irresponsibility. First, the immunity attaches only to conduct within the scope of a guardian *ad litem's* duties. Second, the appointing court oversees the guardian ad item's discharge of those duties, with the power

of removal. Third, parents can move the court for termination of the guardian. Fourth; the court is not bound by and need not accept the recommendations of the guardian.... Finally, determinations adopted by an appointing court are subject to judicial review. These procedural safeguards make threat of civil liability unnecessary.

*Id.*

## CONCLUSION

We hold that guardians *ad litem* enjoy at least qualified immunity for the exercise of their "judicial functions," and that the guardian *ad litem* in this case was performing judicial functions.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**